**WESTMAN COMMISSION COMPANY, Plaintiff,**

v.

**HOBART CORPORATION, Defendant.**

**Civ. A. No. 76–K–918.**

United States District Court, D. Colorado.

April 19, 1983.

As Amended April 26, 1983.

Kenneth L. Starr, Ann Livedalen, Holmes & Starr, Michael J. Abramovitz, Drexler, Wald & Abramovitz, Denver, Colo., for plaintiff.

George F. Karch, Jr., Thomas J. Collin, Thompson, Hine & Flory, Cleveland, Ohio, James E. Hautzinger, and Robert E. Youle, Sherman & Howard, Denver, Colo., for defendant.

### THIRD MEMORANDUM OPINION AND ORDER

KANE, District Judge.

I have previously determined liability in this antitrust case. My memorandum opinion and order is reported at 461 F.Supp. 627 (D.Colo.1978). Following a trial on damages I issued findings of fact, conclusions of law and order which can be found at 541 F.Supp. 307 (D.Colo.1982). The case is now before me for determination of an award for attorney fees and costs. The facts are sufficiently set forth in the cited opinions.

Westman was the successful plaintiff and is entitled to a reasonable attorney fee. Westman lost profits of $1,032,895.00. That amount was trebled as required and resulted in a total recovery of $3,098,685.00. Ad-

ditionally, I determined that for each day that Hobart failed to offer a dealership to Westman, a continuing damage amount of $392.59 would apply. At this time, the situation between the parties respecting Hobart's offer of a dealership is still unresolved. I expect the parties to continue to wrangle over this matter for some time to come.

In applying for an award, I directed Westman to be guided by the analytical method I used in awarding attorney fees in *Black Gold, Ltd. v. Rockwood Industries, Inc.,* 529 F.Supp. 272 (D.Colo.1981). That was an antitrust action where the plaintiff prevailed and was entitled to attorney fees as a matter of right. I did, however, spin out a less than subtle suggestion that the parties here could stipulate to a reasonable attorney fee award, but the thought was unavailing.

I also directed Westman to submit any necessary supporting affidavits and other materials to support its fee claim. In addition, I requested that the claim be submitted in a form which categorizes the work done by counsel. Those categories include: (a) prefiling investigation, (b) pleadings, (c) discovery, (d) discovery disputes, (e) appearances before the magistrate, (f) appearances before the court outside of the trials, (g) investigation and interviewing witnesses, (h) time spent at the two trials, and (i) brief writing. Well in

excess of a hundred pages of highly detailed documents have been submitted in support of Westman's claim.

In *Black Gold,* I employed the "lodestar" method of analysis in awarding attorney fees. This method was originally articulated in *Lindy Bros. Bldrs., Inc. v. American Radiator & Standard Sanitary Corp.,* 487 F.2d 161, 167–79 (3d Cir.1974) (Lindy I), and *Lindy Bros. Bldrs., Inc. v. American Radiator & Standard Sanitary Corp.,* 540 F.2d 102, 112–18 (3d Cir.1974) (Lindy II).

The lodestar analysis is a method which is intended to provide some degree of precision to an admittedly artful process of determining reasonable and just attorney fees. Sharp discernment, however, is not possible. Though I have observed the lawyers, their adversarial skills, the progress of this case, and relied upon my experiences as a trial lawyer and a trial judge, I still must exercise some discretion.

First, lodestar analysis requires me to take into account two factors: (1) the hours expended by counsel which contributed to the recovery; and (2) the reasonable value of counsel's time, usually using counsel's normal hourly billing rates. *Pitchford v. Pepi, Inc.,* 531 F.2d 92, 110 (3d Cir.1976). The lodestar of the fee determination can then be adjusted by two factors: (1) the contingent nature of success in the action,[1] and (2) the quality of the work performed.[2]

---

1. In *Lindy II* the court enumerated certain factors to be considered under this criterion: 1. Analysis of plaintiff's burden. Subsumed in this category are the following considerations: (a) the complexity of the case,—legally and factually; (b) the probability of defendant's liability,—whether it is clear or dubious; whether it has been previously suggested by other civil or criminal proceedings; whether it is asserted under existing case law or statutory interpretation, or is advanced as a novel theory; (c) an evaluation of damages,—whether the claims would be difficult or easy to prove. 2. Risks assumed in developing the case. This category subsumes consideration of: (a) the number of hours of labor risked without guarantee of remuneration; (b) the amount of out-of-pocket expenses advanced for processing motions, taking depositions, etc.; (c) the development of prior expertise in the particular type of litiga-

tion; recognizing that counsel sometimes develop, without compensation, special legal skills which may assist the court in efficient conduct of the litigation, or which may aid the court in articulating legal precepts and implementing sound public policy. 3. The delay in receipt of payment for services rendered.

2. 4. Here the court should "appraise the manner in which counsel discharged his or her professional responsibilities." *Lindy II,* supra, at 117. The court should not alter the award on the basis that the hourly rate charged exceeds general rates if the expertise of the attorney warrants such rates; the award should be augmented or diminished only if the lawyer discharged the professional burden undertaken with a degree of skill above or below that expected. Id. at 117–118.

■ In *Hughes v. Repko,* 578 F.2d 483, 490–493 (3d Cir.1978), a further step was added to the lodestar analysis which is denominated the "post Lindy discretionary adjustment." It takes into account the governmental policies underlying the applicable fee statute and substantive rights involved, and such factors as the customary fee for similar work, the amount received in damages, and fee awards made in similar cases in order to assure the overall fairness of the award.

Defendant has repugned my request that the fee application follow the lodestar analysis I used in *Black Gold,* and argues that I should base the award on the *quantum meruit* approach as set forth in my opinion in *Ramos v. Lamm,* 539 F.Supp. 730 (D.Colo. 1982). That decision is presently on appeal. Since the Court of Appeals ordered expedited briefing over a year ago, I have been waiting anxiously for its decision. In fact I have delayed writing this opinion in anticipation of it. Since I do not know whether the *quantum meruit* approach is permissible and since further delay in this case seems unfair to these litigants, I will use the lodestar analysis. It has the benefit of authoritative approval. Nevertheless, I have considered all of defendant's objections in arriving at this award.

THE LODESTAR

Westman argues that I should consider $348,215.40 to be the lodestar amount before any upward or downward adjustment is made. This amount, it claims, is the total number of hours expended by counsel, law clerks, and paralegals that contributed to the result, multiplied by a reasonable hourly rate charged at the time by the particular individual performing the work. Below are two charts submitted by Westman that set forth the number of hours expended by the person performing the work under each category which I had formerly designated, and the rate that Westman would have been charged but for the fee agreement between it and its counsel.[3]

---

**3.** In addition to those categories I designated for the characterization of the work performed, Mr. Goldburg found it necessary to add category "J" which includes work performed regarding efforts at "strategy and settlement."

CHART 1

TIME VALUE BY CATEGORY AT THE RATES IN EFFECT WHEN THE WORK WAS DONE

| NAME | A | B | C | D | E | F | G | H | I | J | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Goldburg* | 4,747.50 | 1,500.00 | 11,443.00 | 140.00 | 135.00 | 300.00 | 6,147.50 | 19,732.50 | 9,562.50 | 2,115.00 | 55,823.00 * |
| Starr | | | 16,784.30 | 1,750.00 | 1,623.80 | 2,548.40 | 10,928.65 | 7,235.20 | 1,195.15 | | 42,065.50 |
| Abramovitz | 810.00 | 30.00 | 15,210.00 | 42.50 | 63.75 | 956.25 | 14,875.75 | 13,176.00 | 812.50 | | 45,976.75 |
| DeLong | | | 4,748.80 | | | | 688.80 | 7,553.20 | 14,872.05 | | 27,892.85 |
| Livedalen | | | 27,638.675 | 8,904.95 | 768.00 | 827.50 | 11,867.575 | 8,989.50 | 26,649.20 | 6.50 | 85,651.90 |
| Aronow | | | 1,220.80 | 627.20 | | | 991.20 | | 6,787.20 | | 9,626.40 |
| Biermann | | | 33.60 | 280.00 | | | | | 3,060.40 | | 3,374.00 |
| Botting | | | | | | | | | 812.50 | | 812.50 |
| Conant, Jr. | | | | | | | | 82.50 | 82.50 | | 165.00 |
| Casterline | | | | | | | 180.00 | | 120.00 | | 300.00 |
| Correll | | | | | | | 200.00 | | | | 200.00 |
| Drexler | | | | | | | 3,225.00 | 750.00 | | | 3,975.00 |
| Fretz | | | | | | | | | 140.40 | | 140.40 |
| Holmes | | | | | | | | 72.00 | | | 72.00 |
| Lynch | | 364.00 | 352.80 | 1,428.00 | | | | 1,350.00 | 31,637.40 | | 35,112.20 |
| Pratt | | | | | | | | | 33.60 | | 33.60 |
| Reiman | | | 3,402.00 | | | | 156.50 | 210.50 | 36.00 | | 3,805.00 |
| Stern | | | | | | | 1,420.00 | | | | 1,420.00 |
| Touff | | | | | | | 255.00 | 105.00 | 381.00 | | 691.00 |
| Doyle | | | | | | | | | 75.00 | | 75.00 |
| Klann | | | 556.50 | | | | | | 399.00 | | 955.50 |
| O'Donnell | | | | | | | | 556.50 | | | 556.50 |
| Boyd | | | 2,493.20 | | | | | 5,029.30 | 2,259.10 | | 9,781.60 |
| Byron | | | 138.70 | | | | | 199.50 | | | 338.20 |
| Carter | | | 928.00 | | | | 36.00 | | | | 964.00 |
| Everhart | | | | | | | | | 38.00 | | 38.00 |
| Hall | | | 1,214.10 | | | | | 684.00 | | | 1,898.10 |
| Hansen | | | 809.40 | 100.70 | | | | 1,172.30 | 285.00 | | 2,367.40 |
| Lafferty | | | | | | | | 152.00 | 182.40 | | 334.40 |
| Moddelmog | | | 665.00 | | | | | 2,004.50 | 406.60 | | 3,076.10 |
| Nechrony | | | | | | | 54.00 | | 180.00 | | 234.00 |
| Ross | | | 355.30 | | | | | 1,833.50 | | | 2,188.80 |
| Shanzer-Hurwitz | | | 1,445.90 | | | | 76.00 | 790.40 | 228.00 | | 2,540.30 |
| Teevan-Waters | | | 3,653.70 | | | | | 1,656.80 | 419.90 | | 5,730.40 |
| TOTAL | $5,557.50 | $1,894.00 | $93,093.775 | $13,278.35 | $2,590.55 | $4,632.15 | $51,101.975 | $73,345.20 | $100,605.40 | $2,121.50 | $348,215.40 |

* 20.50 hours of Mr. Permut's time was incorporated in Goldburg categories A and B at Mr. Permut's rates.

CHART 2

SUMMARY OF TIME WORKED DIVIDED INTO THE COURT'S CATEGORIES

| NAME | A | B | C | D | E | F | G | H | I | J | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Goldburg* | 65.50 | 30.00 | 161.00 | 2.00 | 1.50 | 4.00 | 59.75 | 218.00 | 112.50 | 23.50 | 677.75 |
| Starr | | | 167.975 | 20.40 | 17.80 | 23.70 | 114.575 | 64.60 | 11.05 | | 420.10 |
| Abramovitz | 13.50 | .50 | 174.50 | .50 | .75 | 10.95 | 177.20 | 157.85 | 9.25 | | 545.00 |
| DeLong | | | 71.60 | | | | 11.40 | 125.80 | 245.25 | | 454.05 |
| Livedalen | | | 379.35 | 130.50 | 10.50 | 11.25 | 169.20 | 115.25 | 343.15 | .10 | 1,159.30 |
| Aronow | | | 21.80 | 11.20 | | | 17.70 | | 121.20 | | 171.90 |
| Biermann | | | .60 | 5.00 | | | | | 54.65 | | 60.25 |
| Botting | | | | | | | | | 16.25 | | 16.25 |
| Conant, Jr. | | | | | | | | .75 | .75 | | 1.50 |
| Casterline | | | | | | | 3.00 | | 2.00 | | 5.00 |
| Correll | | | | | | | 2.50 | | | | 2.50 |
| Drexler | | | | | | | 27.25 | 6.00 | | | 33.25 |
| Fretz | | | | | | | | | 2.70 | | 2.70 |
| Holmes | | | | | | | | .60 | | | .60 |
| Lynch | | 6.50 | 6.30 | 25.50 | | | | 23.75 | 564.40 | | 626.45 |
| Permut* | | | | | | | | | .60 | | .60 |
| Pratt | | | | | | | | | .60 | | .60 |
| Reiman | | | 47.25 | | | | 2.25 | 3.00 | .50 | | 53.00 |
| Stern | | | | | | | 24.25 | | | | 24.25 |
| Touff | | | | | | | 4.00 | 1.75 | 5.45 | | 11.20 |
| Doyle | | | | | | | | | 2.50 | | 2.50 |
| Klann | | | 13.25 | | | | | | 9.50 | | 22.75 |
| O'Donnell | | | | | | | | 13.25 | | | 13.25 |
| Boyd | | | 66.40 | | | | | 132.35 | 59.45 | | 258.20 |
| Byron | | | 3.65 | | | | | 5.25 | | | 8.90 |
| Carter | | | 26.00 | | | | 1.00 | | | | 27.00 |
| Everhart | | | | | | | | | 1.00 | | 1.00 |
| Hall | | | 31.95 | | | | | 18.00 | | | 49.95 |
| Hansen | | | 21.30 | 2.65 | | | | 30.85 | 7.50 | | 62.30 |
| Lafferty | | | | | | | | 4.00 | 4.80 | | 8.80 |
| Moddelmog | | | 17.50 | | | | | 52.75 | 10.70 | | 80.95 |
| Nechrony | | | | | | | 1.50 | | 5.00 | | 6.50 |
| Ross | | | 9.35 | | | | | 48.25 | | | 57.60 |
| Shanzer-Hurwitz | | | 38.05 | | | | 2.00 | 20.80 | 6.00 | | 66.85 |
| Teevan-Waters | | | 96.15 | | | | | 43.60 | 11.05 | | 150.80 |
| TOTAL | 79.00 | 37.00 | 1,353.975 | 197.75 | 30.55 | 49.90 | 617.575 | 1,086.45 | 1,607.20 | 23.60 | 5,083.00 |

* 20.50 of Mr. Permut's time was incorporated in Goldburg categories A and B.

Starting from the base figures submitted by Westman, I have made certain adjustments under some categories to reflect, what I believe, to be the proper lodestar amount.

Westman's counsel were employed under a contingent fee agreement. Although I am not bound by that agreement as I consider the amount of compensation to be awarded in this case, *Black Gold, supra,* at

279, I did consider the agreement and its relation to the risks that counsel faced by working without guarantee of remuneration. *See Lindy II,* at 117. I also considered the agreement in reaching a lodestar amount. Under the agreement, Westman's counsel were charging a lower rate than what would be charged a client on a flat-rate basis.

ADJUSTMENTS

C. *Discovery*

Kenneth Starr participated extensively in this litigation. He submitted a claim for 167.975 hours for discovery. I reject as duplicative and excessive effort in the discovery category 20.00 hours claimed by Livedalen. Much of the time claimed as efforts on discovery was bewildering to me; for example, between July 24, 1981 and September 1, 1981, approximately fifty hours were spent on answering defendant's fourth set of interrogatories. Eighteen hours were spent drafting those answers; 5.50 hours were spent reviewing; 5.50 hours were spent finalizing the answers, but 9.25 hours were spent revising what had been finalized. This is excessive, duplicative and repetitive.

D. *Discovery Disputes*

As I stated in the damage phase of the trial, "[C]ountless discovery battles often made this case resemble an endurance contest more than a trial. . . . All counsel could have engaged in more effective advocacy had they focused their energies on the major issues of the case." 541 F.Supp. at 311. Competent, zealous advocacy of a client's interest demonstrated by dedicated lawyers is a credit to our legal system. When, however, needless, wasteful, and costly time is spent on discovery disputes, the public interest is not served, and neither are the clients. Although the number of hours actually devoted to work done in a particular category is relevant for the purpose of obtaining some objective starting point in an award of attorney fees, those hours spent must have been reasonably necessary to perform the legal services for which compensation is sought. *See Cope-*

*land v. Marshall,* 641 F.2d 880, 891 (D.C.Cir. 1980). Livedalen claimed 130.50 hours spent in discovery disputes. I reject 30.00 hours as unproductive and unnecessary time spent. From Feb. 20, 1979, to April 10, 1979, for example, approximately 44.90 hours were spent on a motion to compel Nobel and Hobart concerning Nobel's refusal to reveal information on the sale of business. Of those hours, 13.50 hours were spent in drafting the motion; 11.15 hours were spent reviewing and revising the same. This is not the only example of unproductive time; on September 19, and 20, 1981, Livedalen spent 12.50 hours drafting a motion for reconsideration of the magistrate's order and ruling. Strangely, no amount of time was spent for revision or review. All other time submitted, I find reasonable and compensation will be awarded appropriately.

F. *Appearances Before Court Outside of Trials*

A total of 49.90 hours was claimed as time spent before the court outside of the two trials. I adjust this figure downward, because of unproductive effort, by 7.75 hours, yet still allow for reasonable time for preparation. Livedalen claimed 11.25 hours. I allow 4.00 hours; 7.75 hours of this time was spent either preparing for hearings or conferring with other counsel concerning closing arguments, which were heard December 10, 1981. This time spent I deem unnecessary in achieving the recovery in this case.

G. *Investigation and Interviewing Witnesses*

Under this category, which will be adjusted downward, I find that several entries in Livedalen's fee claim are excessive. A total of 169.20 hours were claimed. Of those hours, 47.60 were spent reviewing trial transcripts, law review articles, trial exhibits, and miscellaneous documents; only 12.-00 hours were actually spent with witnesses covering a period from January 5, 1979 to July 21, 1981. The remaining hours were filled by conferring with other counsel par-

ticipating in the case or other related activities. I reject 30.00 hours of Livedalen's claim under this category as excessive. A further adjustment downward is made with respect to DeLong's claim under this category. He submitted a claim for 11.40 hours total. I reject 6.50 hours because that amount was claimed as travel time, and there is no indication from his time sheets that work was being performed while traveling.

## I. *Brief Writing*

The entire amount of time claimed as time spent on brief writing is 1607.20 hours. The lawyers, paralegals, and law clerks all contributed. Needless to say, the files in this case are turgid. In no other category was there demonstrated the degree of wasteful and repetitious effort as here. That is not to say that counsel for both sides did not exhibit well-reasoned, quality briefs; they did. In considering, however, what I deem the appropriate amount of time reasonably necessary to achieve the results in this case, I must significantly adjust downward the claimed hours. Defendant justifiably opposes the number of hours claimed by Westman in this category. Defendant cites several examples of repetitious and wasteful effort especially regarding the time claimed by Lynch, a recent law school graduate and one of the lawyers working on this case. Lynch submitted a claim for 564.40 hours total time for brief writing. Of those hours, approximately 432.60 hours were spent reading, researching and reviewing antitrust cases and trial depositions and exhibits. Approximately 74.10 hours were spent in actual drafting and revising briefs. The remaining hours were spent outlining notes, highlighting cases, and organizing documents to be used at trial and for post trial memoranda. I agree with defendant's characterization of Lynch's claim with respect to his efforts concerning the damages research work done on the trial brief, and Westman's reply memorandum to Hobart's closing memorandum; that much of Lynch's time was spent in becoming familiar with general antitrust law. Livedalen, with whom he coordinated

his efforts, dedicated a substantial amount of time toward accomplishing the same result. I find that Lynch's efforts were often duplicative and unproductive and not reasonably necessary to achieve the result in this case. I did, however, allow the total amount of hours claimed as spent under this category by Livedalen. On that basis and on the foregoing description of Lynch's efforts, I reject as claimed by Lynch a total of 282.00 hours. All other time that was claimed by the lawyers and other staff under this category, I allow and deem to be compensable.

## H. *Time Spent At The Two Trials*

The total hours spent at the two trials logged by the lawyers, law clerks, and paralegals is 1,086.45. I have allowed all of this time as compensable in arriving at the lodestar amount. I do this recognizing that for each individual claiming hours spent under this category, a significant amount of time claimed was obviously spent in preparation. From my experience as a trial lawyer, often opposed by highly experienced and excellently trained counsel, the hours expended during the actual trial process represent weeks, months, and sometimes years of preparation. Indeed, the trial is the culmination of efforts by the lawyers and staff toward the organization of facts, witnesses, expert testimony, and many other unenumerable factors which, when compressed into the confines of a trial, will determine the success or failure of a litigated claim. I find that the hours logged under this category are reasonable and deserve compensation.

## J. *Strategy and Settlement*

As indicated earlier, Mr. Goldburg, in an effort to account for the hours he expended in this litigation, found it necessary to add another category to the ones I had already designated for the characterization of work performed; this was helpful to me. I note, however, that, although no settlement was reached in this case concerning many collateral disputes or the main issues, his time is compensable under this category. I also

allow the time Livedalen spent under the same heading.

The chart below gives the attorneys', law clerks' and paralegals' current hourly rates and value of services. The total number of hours and their corresponding value at the current rate for all individuals who worked on this case will represent what I believe to be the proper lodestar amount. By using the current rates, this will constitute an adjustment for inflation and delay. *See In re Ampicillin Antitrust Litigation,* 81 F.R.D. 395 (D.D.C.1978); *In re Master Key Antitrust Litigation,* 76 F.R.D. 460 (D.Conn. 1977), aff'd, 580 F.2d 1045 (2d Cir.1978); *City of New York v. Darling Delaware,* 440 F.Supp. 1132 (S.D.N.Y.1977); *Black Gold,* at 276.

(CHART 3) – 3

| Attorneys | Current Rate | Total Hours Worked Reflecting Adjustments | Current Value |
|---|---|---|---|
| Kenneth Starr | 120 | 420.10 | 50,412.00 |
| Roger Goldburg | 160 | 677.75 | 108,440.00 |
| M. J. Abramovitz | 125 | 545.00 | 68,125.00 |
| Sidney DeLong | 80 | 447.55 | 35,804.00 |
| Ann Livedalen | 85 | 1,071.55 | 91,081.75 |
| Stephen Aranow | 65 | 171.90 | 11,173.50 |
| Dirk Burman | 60 | 60.25 | 3,615.00 |
| Evan Botting | 80 | 16.25 | 1,300.00 |
| Allah B. Conant, Jr. | 150 | 1.50 | 225.00 |
| Cecil W. Casterline | 150 | 5.00 | 750.00 |
| T. A. Correll | 100 | 2.50 | 250.00 |
| S. L. Drexler | 150 | 33.25 | 4,987.50 |
| Joseph H. Fretz | 65 | 2.70 | 175.50 |
| Hardin Holmes | 130 | .60 | 78.00 |
| Stephen F. Lynch | 60 | 344.45 | 20,667.00 |
| Gerald Pratt | 60 | .60 | 36.00 |
| Jerry Reiman | 80 | 53.00 | 4,240.00 |
| C. J. Stern | 95 | 24.25 | 2,182.50 |
| Michael Touff | 85 | 11.20 | 952.00 |

TOTAL VALUE FOR ATTORNEYS $404,494.75

Law Clerks

| | Current Rate | Total Hours Worked Reflecting Adjustments | Current Value |
|---|---|---|---|
| Stephen Doyle | 42 | 2.50 | 105.00 |
| Frederick Klann | 42 | 22.75 | 955.50 |
| Brett O'Donnell | 42 | 13.25 | 556.50 |

TOTAL VALUE FOR LAW CLERKS $1,617.00

Paralegals

| | Current Rate | Total Hours Worked Reflecting Adjustments | Current Value |
|---|---|---|---|
| Carolyn Boyd | 38 | 258.20 | 9,811.60 |
| Patricia Byron | 38 | 8.90 | 338.20 |
| Elizabeth Carter | 38 | 27.00 | 1,026.00 |
| Noelle Everhart | 38 | 1.00 | 38.00 |
| Thelma Hall | 38 | 49.95 | 1,898.10 |
| Karen Hansen | 38 | 62.30 | 2,367.40 |
| Anna Lafferty | 38 | 8.80 | 334.40 |
| Sharon Moddelmog | 38 | 80.95 | 3,076.10 |
| Linda Nechrony | 38 | 6.50 | 247.00 |
| Terry Ross | 38 | 57.60 | 2,188.80 |
| S. Shanzer-Hurwitz | 38 | 66.85 | 2,540.30 |
| T. Teevan-Waters | 38 | 150.80 | 5,730.40 |

TOTAL VALUE FOR PARALEGALS $29,596.30

Having determined the lodestar amount of $435,708.05, it becomes necessary to determine whether it should be adjusted upward or downward. This consideration is affected by three factors: (1) the contingent nature of success, (2) the quality of the work performed, and (3) the governmental policies underlying this fee statute.

Regarding the contingency and quality aspects, Lindy II instructs that several factors are to be considered. *See footnotes 1 & 2, supra.* I have evaluated these factors and considered each one in deciding whether to increase or decrease the lodestar amount. This litigation has continued for many years. At its initial stages, success in proving liability was indeed uncertain and highly contingent. Once liability was proved, however, an award of damages was certain. The task, however, of establishing damages was monumental and required dogged effort by counsel, Marvin Stone and Thomas Ricca. Indeed, without Stone's and Ricca's efforts the result presently achieved would have been significantly diminished. As I have already alluded, counsel on both sides were extremely able in the field of antitrust litigation. At many points during this case, tireless effort was required of all counsel. There were, of course, collateral disputes which, I believe, made the going even tougher, and the appropriate adjustments have been made under the "discovery disputes" category. The "post Lindy discretionary adjustment" has been considered also in determining whether to increase or decrease the lodestar. Having considered all the above factors, however, I am not persuaded that an adjustment upward or downward should be made to the lodestar amount. I find that the amount awarded to Westman for attorney fees, as reflected in the lodestar, is reasonable and requires no adjustment. The lodestar amount was

not easily achieved even though there is an abundance of precise records and documents that were provided by Westman's counsel. I find that the current rate for lawyers, law clerks and paralegals used by plaintiff's counsel is reasonable and consistent with the customary charges of this legal community.

## COSTS

Plaintiff is entitled to costs under 15 U.S.C. § 15. A major portion of the costs claimed here are for expert testimony, that of Marvin Stone and Thomas Ricca. The amount claimed for their expert testimony is $224,662.13. As mentioned earlier, I find that without their testimony and the research contributing to it, the results achieved in this case would have been considerably diminished. Nevertheless, *Union Carbide and Carbon Corporation v. Nisley,* 300 F.2d 561, 586 (10th Cir.1962) holds that such fees are not properly allowable in an antitrust case. See also, *Euler v. Waller,* 295 F.2d 765 (10th Cir.1961) in which Judge Breitenstein holds that items not listed in 28 U.S.C. § 1920 should not be allowed unless an application is made to the court in advance of trial for an approving order. Here no such application was made. Thus, the requests for payment of expert fees for Marvin Stone and Thomas Ricca are denied.[4]

IT IS ORDERED, pursuant to 15 U.S.C. § 15, that plaintiff is awarded attorney fees of $435,708.05 together with costs. Plaintiff, within ten days, shall submit its bill of costs but the costs of expert testimony as described herein shall not be taxed to the defendant.

---

**4.** I am aware of the rule that for compelling reasons of justice in exceptional cases allowances can be made for items of cost not authorized by statute. *Farmer v. Arabian American Oil Co.,* 379 U.S. 227, 235, 85 S.Ct. 411, 416, 13 L.Ed.2d 248 (1964). In fact, I made such an award in *Ramos v. Lamm,* 539 F.Supp. 730, 753 (D.Colo.1982). As I read *Union Carbide,* however, accounting services performed in connection with the prosecution of the plaintiff's case may not be considered exceptional.